# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


## 11-1095


## STATE OF LOUISIANA IN THE INTEREST
## OF B.K.N. & T.M.H.


\*\*\*\*\*\*\*\*\*\*

## APPEAL FROM THE
## FIFTEENTH JUDICIAL DISRICT COURT
## PARISH OF LAFAYETTE, DOCKET NO. JC-2009-0217
## HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE
\*\*\*\*\*\*\*\*\*\*


## SYLVIA R. COOKS
## JUDGE


\*\*\*\*\*\*\*\*\*\*


Court composed of Sylvia R. Cooks, John D. Saunders, and Shannon J. Gremillion, Judges.


**AFFIRMED**.

**15th Judicial District Public Defender's Office**
**P.O. Box 3622, Lafayette, LA 71315-2424**
**Annette Roach, Intermediate Appellate Counsel**
**724 Moss Street, Lake Charles, LA 70601**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **B.A.S.**

**L. Antoinette Beard**
**825 Kaliste Saloom Road**
**Brandywine I, Room 218**
**Lafayette, LA 70508**
**(337) 262-1555**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
      **State of Louisiana**

**COOKS, Judge.**

The State of Louisiana, through the Department of Child and Family Services (hereafter the State) appeals the trial court's denial of its petition to terminate the parental rights of B.A.S., the mother of the minor children at question. Finding no error in the trial court's decision, we affirm

## FACTS AND PROCEDURAL HISTORY

B.A.S. is the mother of the two minor children at issue in this appeal, B.K.N. (born in 2004) and T.M.H. (born in 2008). The children have different biological fathers. The State became involved with the children on or about March 3, 2009, when it received a report alleging B.A.S. had a drinking problem, was in a physically abusive relationship, and was unable to provide care for her children.

An oral instantur order was issued on March 5, 2009, placing the children into the custody of the State. The children were adjudicated children in need of care on May 19, 2009. They were eventually placed in a foster home in Rayne, Louisiana.

A case plan was instituted for B.A.S., requiring her to secure stable housing, maintain employment, attend and complete anger management, domestic violence and substance abuse programs, submit to a psychological evaluation and to provide $50.00 per month parental contribution for her children while in foster care. Pursuant to the case plan, B.A.S. maintained adequate housing and employment. She also completed a substance abuse program. However, it was discovered that B.A.S. had continued a "secret" relationship with R.J., the man who had abused her, and married him on October 5, 2010.

Following discovery of the marriage, a case plan was instituted for R.J., requiring him to secure stable housing, maintain employment, attend and complete anger management, domestic violence, and parenting programs. R.J. failed to even minimally comply with his case plan.

On December 13, 2010, there was a domestic altercation between B.A.S. and R.J. Immediately thereafter, B.A.S. moved out and began residing with her mother.

The case originated in Lafayette Parish, because B.A.S. was residing there at the time the children were removed. Since then, she has primarily resided in Calcasieu Parish. Case management was transferred to Calcasieu Parish on December 29, 2009. On June 2, 2010, an order was issued transferring venue of the case to Calcasieu Parish. However, the Calcasieu Parish District Court refused to accept the transfer. On September 3, 2010, the State filed a Petition for Termination of Parental Rights and Certification of Adoption, seeking the termination of the parental rights of B.A.S. and of the two biological fathers.

The termination hearing was held on April 5, 2011. The trial court ordered the termination of both fathers' parental rights, but denied the termination of B.A.S.'s parental rights. In its written reasons for judgment, the trial court noted that a "significant part" of the state's argument for termination of parental rights against B.A.S. was her failure to complete anger management and substance abuse classes. The trial court found the major reason for this "non-compliance" was B.A.S.'s inability to pay for these programs. The trial court wrote:

> . . . [I am] concerned that a significant part of the non-compliance of her case plan is directly related to lack of economic means. For the Department to suggest that an individual must undergo anger management and substance abuse classes and be forced to pay to go to those classes, is incomprehensible. . . . It would be unjust to terminate a parent's rights because they were unable to afford services.

In line with that reasoning, the trial court ordered the State to provide services and courses to B.A.S. free of charge. Additionally, the trial court ordered the State to "find a mechanism of transport for her from Lake Charles to Lafayette or have the children placed closer to her residence."

The State has appealed the judgment, asserting they proved by clear and convincing evidence that B.A.S. failed to substantially comply with her case plan and there was no reasonable expectation of significant improvement in the near future. The State also contended the trial court erred in ordering it to provide free courses and services for B.A.S. The State also asserts it was error to order it to provide transportation to the mother for visits or, in the alternative, place the children closer to the mother's residence.

## ANALYSIS

This Court, in *State ex. Rel. Q.P.*, 94-609, p. 3 (La.App. 3 Cir. 11/2/94), 649 So.2d 512, 515, set forth the burden of proof for termination of parental rights:

> Parental rights to the care, custody, and management of children is a fundamental liberty interest warranting great deference and vigilant protection under the law. *State in the Interest of C.P.*, 463 So.2d 899 (La.App. 2 Cir.1985). On this basis, the Louisiana legislature imposed statutorily strict procedural and evidentiary requirements which must be met before issuance of a judgment terminating parental rights. As explained in *State in the Interest of J [.]*, 582 So.2d 269 (La.App. 1 Cir.), *writ denied*, 583 So.2d 1145 (La.1991), the evidentiary standard established in termination cases mandates that the State present proof by clear and convincing evidence of the parents' failure to comply with all the enumerated conditions relied upon in the specific paragraph(s) of LSA-Ch.C. Art. 1015 before terminating parental rights. Accordingly, this heightened burden of proof requires the State to show not only that the existence of the fact sought to be established is more probable, but rather that the fact is highly probable or more certain. *Hines v. Williams*, 567 So.2d 1139 (La.App. 2 Cir.), *writ denied*, 571 So.2d 653 (La.1990). However, we are mindful that in assessing whether the clear and convincing evidentiary standard was followed in the lower court, we must determine whether the record reflects that the juvenile court manifestly erred. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

Only if the court finds that the grounds for termination are proven by clear and convincing evidence, must it then examine whether termination of parental rights are in the best interest of the child. La.Ch.Code art. 1037.

Louisiana Children's Code Article 1015 provides the statutory grounds by which a court may involuntarily terminate the rights and privileges of parents. The

3

State need only establish by clear and convincing evidence one ground found in La.Ch.Code art. 1015, but it must also be found that termination is in the best interest of the child. La.Ch.Code art. 1039.

In this case, the State sought to terminate the mother's parental rights pursuant to La.Ch.Code art. 1015(5), which provides:

> (5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and need for a safe, stable, and permanent home.

With regard to B.A.S., the first requirement of La.Ch.Code art. 1015(5) has been met, as at least one year has elapsed between the time the children were removed from B.A.S.'s custody pursuant to a court order until the petition for termination was filed. However, the trial court did not agree with the State that it proved a substantial lack of compliance by B.A.S. with her case plan.

B.A.S.'s caseworker, who testified at trial, stated that prior to November, 2010, B.A.S. had maintained stable housing. However, she lost her housing due to economic reasons and had not been able to secure stable housing since that date.

The caseworker also noted B.A.S. attended and completed substance abuse classes; however, she continued to battle substance abuse problems. B.A.S. acknowledged at trial her struggles with alcohol and her frequent attempts to complete the substance abuse component of her case plan. She testified she completed the Lake Charles Addictive Disorder Clinic in April, 2010, but stated due to stress from the termination proceedings, she began drinking again in September, 2010. She committed herself to J.R. Briscoe Treatment Facility in

March, 2011, and was released from that program the day before the termination hearing.

The caseworker also testified that B.A.S. did not complete her parenting courses, because she missed two classes. B.A.S. also missed two of her four anger management classes, which she was required to complete before she could begin domestic violence classes.

The caseworker also noted B.A.S. paid very little toward the support of her children while they have been in foster care. B.A.S. acknowledged she paid very little support, but stated she received calls from the foster mother and spent money buying the children clothes and other essentials.

B.A.S. testified as to the difficulty she had in maintaining employment to pay for her mandated courses, while trying to attend the same courses and adhere to the home visits and scheduled visits with her children. She specifically testified there were occasions where she had to decide between saving her job or complying with components of her case plan. She testified she attempted to find programs which were more affordable and tried to arrange an alternative visit location to avoid the expense of having to travel to Lafayette for each visit. She acknowledged she had been unable to comply with all aspects of her case plan, and asked the court to allow her more time to make the money necessary to comply with the case plan.

The trial court undoubtedly found B.A.S.'s testimony was credible, and specifically noted it was "concerned that a significant part of the non-compliance of her case plan [was] directly related to lack of economic means." The trial court also found B.A.S. attempted to comply with her case plan, although she failed in many respects.

The trial court also did not agree with the State that it proved there was no reasonable expectation of significant improvement in the near future. The trial

court recognized that B.A.S. had made sincere efforts to comply with her case plan. The trial court specifically found B.A.S. "is making attempts to better herself and address her problems. . ." The trial court also noted B.A.S. agreed to seek aftercare treatment or live in a halfway house. The court stated at the next review hearing, B.A.S. would be required to show substantial compliance with aftercare.

Our Supreme Court in *State in the Interest of L.L.Z. v. M.Y.S.*, 620 So.2d 1309, 1317 (La.1993), stated "a reasonable expectation of reformation is found to exist if the parent has cooperated with state officials and has shown improvement, although all of the problems that exist have not been eliminated." The facts as presented in this record show that although there has been less than substantial compliance with the case plan, certain requirements of the plan have been undertaken by B.A.S. and/or completed. The trial court did not err in concluding the State failed to prove by clear and convincing evidence that there was no reasonable expectation of significant improvement in the near future.

Based on the record before us, we find the trial court did not manifestly err in concluding the State failed to meet its heavy burden of presenting clear and convincing proof of one of the statutory grounds for involuntary termination of B.A.S.'s parental rights and that termination of those rights are in the best interest of B.K.N. and T.M.H.

In its final assignment of error, the State argues the trial court exceeded the available options set forth in La.Ch.Code art. 1039 in ordering it to provide classes to B.A.S. free of charge and find transportation for her to visit with her children or place them closer to her. We disagree.

Louisiana Children's Code Article 1039(B)(6) permits the trial court to "[m]ake any other disposition that is in the best interest of the child." We find ordering the State to bear the costs of required classes assures fundamental fairness in this case and is in the best interest of the children. Without question, a timely

6

resolution concerning the custody of the children, whether it is reunification or termination, is in the best interests of the children. As B.A.S. argues, poverty should not deprive her of the opportunity to complete her case plan and be reunited with her children. If concerns involving poverty are removed and B.A.S. still fails to substantially comply with her case plan, there can be no question the proceedings which led to termination afforded her fundamental due process.

The trial court's written reasons clearly set forth that it felt a "significant" part of any non-compliance by B.A.S. in regard to her case, was "directly related to lack of economic means." In *State in the Interest of A.T., T.A. & J.A.*, 06-501, p. 6 (La. 7/6/06), 936 So.2d 79, 83-84, the Louisiana Supreme Court noted in accordance with the Louisiana Children's Code, "the State must undertake reasonable efforts to assist the parent in removing the obstacles to reunification." The court then noted that "reasonable efforts" are defined by La.Ch.Code. art. 603(23) as "the exercise of ordinary diligence and care by department caseworkers and supervisors and shall assume the availability of a reasonable program of services to children and their families." *Id.* at 84. Therefore, we find no error in the trial court's decision ordering the State to provide classes to B.A.S. and find transportation for her to visit with her children or place them closer to her.

## DECREE

For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against appellant, the State of Louisiana.

**AFFIRMED.**

7